**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 24-82** |
| | : | |
| | : | |
| **JOEL TORRES RODRIGUEZ** | : | |

<u>**DEFENDANT'S SENTENCING MEMORANDUM**</u>

The parties agree that the sentencing guidelines in this case are 0 – 6 months' imprisonment and that restitution of as much as $9,900 may be ordered. *See* ECF No. 74 at ¶¶ 2, 9(a), 11(b). Mr. Torres Rodriguez is a "zero-point offender." This case spells his first arrest, let alone conviction. He has been above reproach on pretrial release and has maintained full-time employment as a sales representative for United Foods Brands selling global foods to neighborhood grocery stores. The parties respectfully move the Court to honor the negotiated disposition in this case and to sentence Mr. Torres Rodriguez consist with the plea agreement. Mr. Torres Rodriguez, by his counsel undersigned, Jeremy Isard, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, submits this memorandum to detail why the Court should impose a sentence of time-served and two years of supervised release.

I.     <u>**INTRODUCTION**</u>

Three and a half years ago, Mr. Torres Rodriguez was contacted by a high school acquittance who presented him with an easy way to make $2000. "Here's what will happen," the acquaintance told him: You will receive a cashier's check in your name, cash it, keep $2000, and then give the rest (indirectly) to a man called Mr. Vo.  Mr. Torres Rodriguez thought it was fishy but relinquished his better judgment and agreed. He did as he was instructed. And thought no more

of it. It was a one-time event. Two years later, Mr. Torres Rodriguez was working full-time and raising his young daughter with his long-time romantic partner Lesley Campos. Then postal inspectors came knocking and Mr. Torres Rodriguez learned that he was charged in a federal bank fraud indictment with people he had never met or communicated with.

Conviction under the capacious federal bank fraud statute does not require Mr. Torres Rodriguez to have known of the scope of others' involvement. Nor is this case a conspiracy where the actions of others would be imputed to him. Mr. Torres Rodriguez was initially puzzled at why he was charged federally when a local misdemeanor Bad Checks charge, *see* 18 Pa Code § 4105, seemed to fit the bill much better. After extensive negotiations with the government, however, the parties reached a plea agreement that properly recognized the scope of his involvement—a stipulated loss amount of $9900. Mr. Torres Rodrgiuez has never denied his actions and agreed to plead guilty in exchange for the stipulated loss amount. As Mr. Torres Rodriguez professed to Your Honor on March 17, 2025, he takes complete responsibility for his actions. He will come before Your Honor on October 14, 2025, for sentencing and will continue to do the same.

For the reasons stated herein, Mr. Torres Rodriguez respectfully asks Your Honor to sentence him to time served and a two-year term of supervised release. It is a sufficient, but not greater than necessary, sentence to meet the statutory factors outlined 18 U.S.C. § 3553(a), *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.

## II.     MR. TORRES RODRIGUEZ'S PERSONAL HISTORY

Joel Torres Rodriguez was born on May 23, 2001, in Monción, Dominican Republic, a hilly, agricultural municipality know for growing cassava. Joel came to the United States lawfully, as a six-year-old, accompanied by his father who was in search of better economic opportunities to support his young family. The family landed in Camden, New Jersey, where his dad worked as

a grocery store clerk. Joel helped around the store in every way he could, stocking shelves and helping customers. It was a true family business. When Joel was 10, his parents split up and Joel, along with his two siblings, moved with their mother to Philadelphia. Joel became at Legal Permanent Resident in the United States and Philadelphia became his true home.

Joel spent his adolescence and young adult years here in Philadelphia. He attended Olney Charter High School and, for a period, moved back in with his father. But then tragedy struck. Joel's mother—Yuderka Rodriguez—was diagnosed with brain cancer. Joel cared for his mother between classes and every night and weekend. He was her primary caregiver. In 2019, Ms. Rodriguez died. Joel was wrecked by his mother's death. But he stayed in school and out of trouble. In 2020, he graduated.

Mr. Torres Rodiguez wasted no time in finding work. He found a job packing boxes with United Food Brands in Clifton, New Jersey. He was a reliable, hard-working employee. Joel and Ms. Campos were together by this juncture and began talking about having a family. Joel cared for his two adolescent maternal half-siblings, who—to this day—consider him a father figure. Then, Ms. Campos gave birth to Leihla, Joel's daughter, the new epicenter of their family life. Joel kept his job and, in 2023, the same enterprising spirit that had him stocking his father's store earned him a promotion to Sale Representative. He holds this job to this day, earning approximately $6500 a month and providing customers with extensive knowledge of the company's 1000+ product catalog.

The instant case is a complete outlier in Mr. Torres Rodriguez's law-abiding, productive, family-centered life. This is his first and only criminal offense. He is an active father who works full time to provide for his family and to send his now-four-year-old to a private Catholic school.

3

He is beyond remorseful for his actions in this case. Even if it was a single bad check, this case jeopardizes everything he has—most critically, his ability to care for his family.

### III. GUIDELINE OBJECTIONS

The Presentence Report and all parties conclude that the U.S. Sentencing Guidelines in this case call for a sentence of 0 – 6 months' incarceration. Mr. Torres Rodriguez, like the government, humbly asks the Court to accept the negotiated disposition in this case, which includes a total loss amount of $9900 attributable to him. While the defense does not minimize Mr. Torres Rodriguez's actions, he was undisputedly a peripheral, minor actor in the scheme. He had no knowledge of the actions of other defendants, nor knowledge of the portion of the single check he deposited that would constitute loss to the bank. Perhaps most critically, the fraud loss stipulation was the contractual consideration in exchange for which Mr. Torres Rodgriuez entered his guilty plea. A 2-point offense level increase is appropriate pursuant to USSG § 2B1.1(b)(1)(B), not a 4-point increase under § 2B1.1(b)(1)(C).

Similarly, there is no contention that Mr. Torres Rodriguez was involved in the unauthorized transfer or use of identity documents. He was provided with a check in his name, which he deposited in his bank account; he then gave most of the cash to a person he had never met. That is the extent of his involvement. He did not know of, let alone aid and abet, any defendant's actions related to unlawful use of identity documents. Those allegations, while relevant to the actions of others in this indictment, are beyond the scope of Mr. Torres Rodriguez's involvement. The 2-point enhancement under USSG § 2B1.1(b)(11)(C)(i) should therefore not apply.

With these changes, the total offense level would be 3 and the final guideline calculation would remain 0–6 months incarceration.

4

**IV. <u>APPLICATION OF THE REMAINING 18 U.S.C. § 3553(a) FACTORS TO MR. TORRES RODRIGUEZ'S CASE.</u>**

A careful analysis of the factors set forth in 18 U.S.C. § 3553(a)—with which the Court is familiar—dictates that the most appropriate sentence in this case is a sentence of time served and two years of supervised release. It is sufficient, but not greater than necessary.

Mr. Torres Rodriguez history and characteristics, as discussed above and considered in light of § 3553(a)(1), bring context and chronology to the transgression at issue in this case. His decision to say yes to his high school friend's proposition was a terrible lapse of judgment for a 20-year-old father who was finding his way in the workforce and grieving the recent loss of his mother. But it is a one-off occasion in Mr. Torres Rodrgiuez's background. Everything else in his history shows positive potential and significant contributions to his family and to society. There is no penological purpose in locking him up.

A sentence to time served also reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. It is guideline sentence.

To the extent necessary, such a sentence would provide specific deterrence. Mr. Torres Rodriguez has been on restrictive conditions of pretrial release for almost two years and will do the same on supervised release. Open felony charges have disrupted his life and have brought a tremendous amount of stress to his family. The experience of facing federal charges and becoming a felon long extinguished any residual possibility that Mr. Torres Rodrgiruz will commit another crime.

Mr. Torres Rodriguez will take maximum advantage of all education and vocational opportunities afforded to him if he is incarcerated. Otherwise, he will continue to work full-time and provide for his family.

5

A sentence to time served would not create an unwarranted sentence disparity. According to the United States Sentencing Commission, the median sentence for defendants sentenced pursuant to § 2B1.1(b)(1)(B) in Criminal History Category I nationwide between 2020 and 2024 was 0 months imprisonment. For the reasons stated in this memorandum, Mr. Torres Rodriguez contends that this would be an appropriate sentence in his case.

Restitution should be a component of Your Honor's sentence too. It was the centerpiece of the parties' negotiations. With the financial demands of a young family, Mr. Torres Rodriguez will have to work extra hours to fulfill this $9900 obligation.

Mr. Torres Rodriguez is differently situated than the vast majority of criminal defendants in federal court. He has no criminal record. His guidelines are the lowest range contemplated by the USSG manual. His offense was almost four years ago and constituted a single, albeit serious, lapse of judgment. The parties worked hard to fashion a plea agreement to resolve this case and to permit Mr. Torres Rodrguez to take full responsibility for his actions—something he wanted to do from the very inception of this prosecution. But critically, the resolution also accounts for his minor role in the offense and properly tethers his restitution to the scope of his knowledge and involvement.

A guideline sentence of time served, two years of supervised release, and $9900 in restitution, is a sufficient, but not greater than necessary, sentence in this case. Mr. Torres Rodriguez said it best himself: "It's something I regret. It will never happen again. I am a good citizen."

**WHEREFORE**, the defense prays that the Court will accept the parties' agreement and sentence Mr. Torres Rodriguez accordingly.

Respectfully submitted,

_____
Jeremy Isard
Assistant Federal Defender

## CERTIFICATE OF SERVICE

I, Jeremy Isard, Assistant Federal Defender, Trial Unit, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a copy of Defendant's Sentencing Memorandum, via electronically through Eastern District Clerk's Office Electronic Case Filing upon Megan Curran, Assistant United States Attorney, Suite 1250 - United States Attorney's Office, 615 Chestnut Street, Philadelphia, Pennsylvania 19106.


_____
Jeremy Isard
Assistant Federal Defender


DATE:  October 8, 2025